[Cite as *State v. Bowling*, 2011-Ohio-4946.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100323 |
| | | TRIAL NO. B-0903357 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| DAVID BOWLING, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part and Cause Remanded

Date of Judgment Entry on Appeal:  September 30, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ravert J. Clark*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**SYLVIA SIEVE HENDON, Judge**.

{¶1}    On May 22, 2009, defendant-appellant David Bowling, who was required to register as a sex offender on the basis of a July 14, 1997, conviction for rape, was indicted for failing to provide notice of an address change, a first-degree felony. Bowling had been classified on July 29, 1997, as a sexual predator under former R.C. Chapter 2950 ("Megan's Law"). See Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, enacted in 1996, amended in 2003 by Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6556. He had been reclassified as a Tier III sex offender by the Ohio Attorney General under Am.Sub.S.B. No. 10 ("Senate Bill 10"), which the General Assembly enacted in 2007 to implement the federal Adam Walsh Child Protection and Safety Act of 2006.

{¶2}    Bowling initially pleaded not guilty by reason of insanity. After a court-clinic evaluation, Bowling pleaded guilty to failing to provide notice of an address change as a second-degree felony. He was sentenced to seven years' incarceration. Bowling has appealed, raising three assignments of error for our review.

{¶3}    We note that the indictment incorrectly referred to Bowling's failure-to-notify offense as a violation of R.C. 2950.05(E)(1), and that the sentencing entry incorrectly referred to the offense as a violation of R.C. 2950.05(E)(2). R.C. 2950.05(E)(1) and (E)(2) set forth the duties of the sheriff upon receiving an offender's change-of-address notification or an offender's registration of a new residence, school, institution of higher learning, or place of employment. The indictment and the sentencing entry should have referred to R.C. 2950.05(F)(1), which provides that "[n]o person who is required to notify a sheriff of a change of address * * * shall fail to notify the appropriate sheriff * * *."

{¶4} A clerical error in an indictment that does not mislead or prejudice a defendant, even if carried through to the judgment entry, does not affect the validity of the conviction and may be corrected in a nunc pro tunc entry. See *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, 943 N.E.2d 1010, ¶13, citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶18-19; *State v. Brown*, 1st Dist. Nos. C-100309 and C-100310, 2011-Ohio-1029; *State v. Marzolf*, 9th Dist. No. 24459, 2009-Ohio-3001; Crim.R. 36. The language of the indictment and the facts set forth by the prosecutor during Bowling's plea hearing clearly indicated that he was charged with and convicted of an offense under R.C. 2950.05(F)(1). Bowling pleaded guilty to facts establishing a violation of R.C. 2950.05(F)(1). It is clear from the record that Bowling was not misled or prejudiced by the clerical error. Therefore, it may be corrected. See *State v. Freeman*, 1st Dist. No. C-100389, 2011-Ohio-4357.

{¶5} Bowling's first assignment of error alleges that the trial court erred in accepting his guilty plea. Bowling argues that his plea was not made knowingly, intelligently, and voluntarily because he was under the influence of prescription medication.

{¶6} The record shows that in accepting Bowling's plea, the trial court conducted a thorough colloquy with Bowling, strictly complying with the provisions of Crim.R. 11(C) and correctly informing him about the constitutional rights enumerated in *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709. The court substantially complied with the rule in all other respects. See *State v. Ballard* (1981), 66 Ohio St.2d 473, 423 N.E.2d 115; *State v. McCann* (1997), 120 Ohio App.3d 505, 698 N.E.2d 470.

{¶7}    Regarding Bowling's medication, the trial court addressed him as follows:

{¶8}    "THE COURT:   Today, are you under the influence of drugs, medication or alcohol?

{¶9}    "THE DEFENDANT:  Medication.

{¶10}   "THE COURT:  What medication?

{¶11}   "THE DEFENDANT:  Morphine, Oxycodone, Neurontin, for pain.

{¶12}   "THE COURT:  Okay.  And do those affect your ability to understand and make intelligent choices?

{¶13}   "THE DEFENDANT:  I don't believe so, no.

{¶14}   "THE COURT:   Okay.   All right.   The Court has observed the defendant for a little while here now at this point and it is apparent to me that the defendant understands what's going on and appears to be competent to make decisions that he's making today."

{¶15}   The court specifically asked Bowling about his medications and their effects on him.  Bowling indicated that his medications did not affect his ability to understand the plea proceedings.  The trial court stated on the record that Bowling did not appear to be affected by the medications.  The record shows that the trial court conducted a meaningful dialogue with Bowling to ensure that his plea was made knowingly, voluntarily, and intelligently.  There is no indication in the record that Bowling was confused, or that he did not understand the nature of the proceedings or the consequences of his plea.  The first assignment of error is overruled.

{¶16} Bowling's second assignment of error alleges that he was denied the effective assistance of counsel because his trial counsel advised him that he would receive "probation" in exchange for pleading guilty.

{¶17} Counsel's performance will not be deemed ineffective unless and until it is proved to have fallen below an objective standard of reasonable representation and to have prejudiced the defendant. See *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the proceedings would have been different. See id.; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶18} The record does not demonstrate Bowling's alleged error. When the trial court asked Bowling if he had been promised "anything * * * to plead guilty," he answered, "No." Bowling also stated that he was satisfied with counsel's representation. Further, during sentencing, Bowling's counsel stated, "If the court were to consider community control, he'd be supervised by the probation department as well as his parole officer in addition to his duties to continue to report," indicating that community control was a possibility, not a condition of the guilty plea.

{¶19} The record does not support Bowling's claim of ineffective assistance of counsel. The second assignment of error is overruled.

{¶20} Bowling's third assignment of error, raised in his supplemental brief, alleges that the trial court erred in accepting his guilty plea to the failure-to-notify offense because the offense was based upon an unconstitutional reclassification under Senate Bill 10.

{¶21}   In *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, the Ohio Supreme Court held that "R.C. 2950.031 and 2950.032, which require the attorney general to reclassify sex offenders whose classifications have already been adjudicated by a court and made the subject of a final order, violate the separation-of-powers doctrine by requiring the reopening of final judgments." See id., paragraph three of the syllabus. Further, the court held that the statutes violate the separation-of-powers doctrine because they "impermissibly instruct the executive branch to review past decisions of the judicial branch." See id., paragraph two of the syllabus. The court severed the statutory provisions, holding that "R.C. 2950.031 and 2950.032 may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration orders imposed previously by judges are reinstated." See id. at ¶66.

{¶22}   In *State v. Gingell*, 128 Ohio St.3d 444, 2011-Ohio-1481, 946 N.E.2d 192, the Ohio Supreme Court held, citing *Bodyke*, that an offender who was judicially classified as a sexually oriented offender and ordered to register annually for ten years under Megan's Law could not be prosecuted for failing to comply with a more restrictive registration requirement imposed after reclassification as a Tier III sex offender under Senate Bill 10.

{¶23}   Bowling was classified under Megan's Law as a sexual predator on July 29, 1997. He was subsequently reclassified under Senate Bill 10 as a Tier III sex offender. Pursuant to *Bodyke*, Bowling's Megan's Law classification, community-notification, and registration orders were reinstated. Bowling's classification under Megan's Law as a sexual predator required him to register for life and to verify his information every 90 days. He also had an ongoing duty to notify the sheriff of any change of address. That duty remained the same under both versions of R.C. Chapter

2950 and was not affected by any reclassification. Therefore, his failure-to-notify offense was not based upon an unconstitutional reclassification.

{¶24} Bowling also alleges that the trial court erred in applying current R.C. 2950.99, which prescribes the penalty for Bowling's failure-to-notify offense. Bowling argues that the court should have applied the version of R.C. 2950.99 that was in effect at the time of his original classification as a sexual predator.

{¶25} "A statute is retroactive if it penalizes conduct that occurred before its enactment." See *State v. Williams*, 103 Ohio St.3d 112, 2004-Ohio-4747, 814 N.E.2d 818, ¶7. A statute that "does not 'change * * * the legal consequences of acts completed before its effective date,' but simply mandates an enhanced penalty for acts committed after the effective date of the provision," is not retroactive. See *State v. Clark* (Aug. 5, 1992), 1st Dist. No. C-910541, citing *Miller v. Florida* (1987), 482 U.S. 423, 107 S.Ct. 2446.

{¶26} Current R.C. 2050.99's penalty provisions became effective January 1, 2008. Bowling pleaded guilty to failing to notify the sheriff of an address change on or about May 1, 2009. Although Bowling's duty to register stemmed from his sex offense, his failure to notify the sheriff of an address change was a new offense that he had committed after the effective date of current R.C. 2950.99's penalty provisions. See *Freeman*, supra at ¶25; *State v. Richey*, 10th Dist. No. 09AP-36, 2009-Ohio-4487. Therefore, current R.C. 2950.99 was not applied retroactively to Bowling's conduct. See *Freeman*, supra at ¶25.

{¶27} The Ohio Supreme Court's decision in *State v. Williams*, ____ Ohio St.3d ____, 2011-Ohio-3374, ____ N.E.2d ____, does not require a different result. In *Williams*, the court held that "2007 Am.Sub.S.B. No. 10, as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio

Constitution, which prohibits the General Assembly from passing retroactive laws." Id., syllabus. The court concluded that Senate Bill 10's more stringent classification, registration, and community-notification provisions imposed "new or additional burdens, duties, obligations, or liabilities as to a past transaction" and created "new burdens, new duties, new obligations, or new liabilities not existing at the time" upon sex offenders who had committed their crimes prior to Senate Bill 10's enactment. Id. at ¶19. The court held that Senate Bill 10's classification, registration, and community-notification provisions were punitive and could not constitutionally be retroactively applied to sex offenders who had committed their sex offenses before its enactment.

{¶28} As we pointed out in *Freeman*, "*Williams* dealt with the imposition of Senate Bill 10's more stringent registration requirements upon an offender who had committed his sex offense prior to its enactment." See *Freeman*, supra at ¶21. The instant case deals with the imposition of current R.C. 2950.99's penalty provisions on Bowling, who committed his failure-to-notify offense after the effective date of that statute. Although current R.C. 2950.99 has the same effective date as Senate Bill 10, it was not enacted as part of Senate Bill 10. It was enacted as part of Am.Sub.S.B. 97 ("Senate Bill 97"), which, among other things, modified the penalties for violations of the sex-offender registration and notification laws. See *Freeman*, supra at ¶21.

{¶29} Bowling had committed a sex offense and had been classified under Megan's Law as a sexual predator. Pursuant to that classification, he was required to register as a sex offender every 90 days for life and to notify the sheriff of any change in his address. Senate Bill 10 did not affect Bowling's duty to notify the sheriff of a change of address. Bowling committed his failure-to-notify offense on or about May 1, 2009, well after the effective date of current R.C. 2950.99. Bowling had an ongoing duty to notify the sheriff of any change of address. He failed to do so. Bowling's sentence was

based on his failure-to-notify offense, which occurred after R.C. 2950.99's effective date. The third assignment of error is overruled.

{¶30}   We, therefore, remand the cause for correction of the record to reflect a conviction under R.C. 2950.05(F)(1), but in all other respects we affirm the judgment of the court below.

Judgment affirmed in part, and cause remanded.

**HILDEBRANDT, P.J.,** and **CUNNINGHAM, J.**, concur.

Please Note:
   The court has recorded its own entry this date.